1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOSEPH DONALSON,                          No.  2:11-cv-3429 LKK AC P

12                 Petitioner,

13        v.                                   FINDINGS AND RECOMMENDATIONS

14   AREF FAKHOURY,

15                 Respondent.

16

17        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas

18   corpus pursuant to 28 U.S.C. § 2254.  The action proceeds on the petition filed December 23,

19   2011, ECF No. 1, which challenges petitioner's 2007 conviction for manufacturing

20   methamphetamine.  Respondent has answered, ECF No. 15, and petitioner has filed a traverse,

21   ECF No. 21.

22                                   BACKGROUND

23        Petitioner and co-defendant Desmond Cominos were charged in Sacramento County

24   Superior Court with manufacturing methamphetamine in the trailer park where both men lived.

25   Cominos pled guilty immediately before jury selection.  He did not testify at petitioner's trial.

26        Trial

27        *Prosecution case*

28        Barbara and Michael Flores were the on-site managers of a RV park at the Sherman Lake

1

Resort in Rio Vista.  Desmond Cominos lived in his Pace Arrow motor home at the park.
Cominos introduced petitioner to the Floreses as his friend.  Beginning several months prior to
May 2006, the Floreses rented a spot to petitioner that was diagonally across the street from
Cominos's Pace Arrow.  Petitioner lived there in a Winnebago that he purchased from the
Floreses.  Defendant also had a brown pickup that he drove daily, and two other vehicles.

Barbara Flores watched the comings and goings at the Sherman Lake Resort very closely,
and made nightly rounds of the park.  She testified that when petitioner first moved in, a friend of
his named Cindy stayed with him for a while.  After Cindy left, petitioner was the only resident of
the Winnebago.  On occasion, petitioner would be absent for two to four days at a time.  During
those times Barbara never observed activity or lights on in his motor home, which was kept
padlocked from the outside.  Petitioner never mentioned that anyone else was living in his
Winnebago, or sought the Floreses' help in evicting anyone.  Barbara kept track of who was
staying at the park, and checked the ID of anyone who stayed with a park resident for more than a
couple of days.  Petitioner sometimes had overnight guests, but no one after Cindy stayed for
long.

Defendant's across-the-street neighbor, Deanna Beville, saw petitioner and Cominos
together at the Sherman Lake Resort 6 to 12 times.  They would talk and go inside one another's
motor homes.  Petitioner's girlfriend lived with him in the Winnebago at first, but after she left
Beville never saw anyone other than petitioner living there.

At about 2:45 a.m. on May 14, 2006, police officers served a search warrant on
petitioner's Winnebago and his vehicles.  When they knocked on the front door of the motor
home and received no response, they forced open the door.  When they entered, Detective
Nicholas Gartner saw a hot plate that was plugged in and turned on, glassware, plastic tubing,
Red Devil lye, a bottle of Heet, powdered red phosphorus, and hydrogen peroxide.  He also
smelled strong chemical odors which he associated with methamphetamine manufacturing.
Nobody was inside the Winnebago, but petitioner's brown pickup was parked right outside the
front door.  The smell of chemicals was so strong that Detective Shawn Spencer had to leave the
Winnebago within 30 seconds of entry.

Detective Gartner left the Winnebago and began walking down a dirt road.  He saw petitioner coming out of the Pace Arrow motor home that was diagonally across the street from the Winnebago.  When Gartner shouted to petitioner to stop, and identified himself as a police officer with a search warrant, petitioner ran in the opposite direction.  Gartner, Spencer and another officer gave chase.  Petitioner ran toward the rear of the Pace Arrow and climbed over a fence.  He ended up hiding underneath the very Pace Arrow that he had run from.  Petitioner was apprehended and searched.  The key to the Winnebago was found in his pants pocket.

While near the Pace Arrow, the detectives smelled a strong chemical odor similar to that inside the Winnebago.  They knocked at the door and announced their presence.  When they received no reply, they entered.  Inside were items consistent with methamphetamine manufacturing, including Red Devil lye, a bottle of Heet, and bottles of hydrogen peroxide.  There was also an ounce of methamphetamine in a plastic storage container and possibly 2 two more ounces that were sitting on two coffee filters on the floor of the shower stall.  Cominos was in the back of the Pace Arrow.  Later, the detectives determined Cominos was living there.

In the back of petitioner's brown pickup truck the detectives found a garbage bag containing over 50 empty blister packs of pseudoephedrine tabs, stained green latex gloves similar to a box of gloves found in the Winnebago, used tubing, used bottles of iodine tincture, two empty containers of Heet, a bottle of hydrogen peroxide, and a black balloon containing suspected phosphate gas attached to tubing.  These chemicals and supplies are used in methamphetamine manufacturing.

The jury heard extensive testimony about the process by which methamphetamine is manufactured using the chemicals and materials found in the Winnebago, Pace Arrow, and petitioner's pickup truck.

The jury also heard evidence of a prior incident, offered for a limited purpose.[1]  On

---

[1] At the time of Officer Golinveaux's testimony, the jury was instructed that it could consider the evidence only for the purpose of "determining whether or not the Defendant had the prerequisite knowledge as required to be found in violation of the manufacturing statute for which he is on trial in this case."  2 RT 459.  The final instructions permitted the jury to consider the evidence in relation to (1) the defendant's intent to manufacture; (2) the defendant's knowledge that methamphetamine is a controlled substance; or (3) the existence of a plan or scheme.  2 CT 376.

January 17, 2006, Concord Police Officer Daniel Golinveaux saw petitioner and two men talking next to petitioner's brown pickup outside a convenience store. The officer observed a hand-to-hand transaction between petitioner and one of the men that looked like a narcotics exchange. Petitioner then drove off in his pickup with the other man. Officer Golinveaux followed petitioner and pulled him over for expired vehicle registration. There was a very strong chemical odor coming from the pickup and from petitioner. Later, during a jail search, a baggie of suspected methamphetamine fell from petitioner's groin area when he removed his pants and underwear. Plastic garbage bags in the bed of his pickup contained items consistent with methamphetamine manufacturing, including bottles of Heet, hydrogen peroxide, Red Devil lye, plastic tubing, and the packaging from cold medicine containing pseudoephedrine. Receipts taken from the truck and from petitioner's person documented purchases of pseudoephedrine at numerous different drugstores.

*Defense Case*

Petitioner's close friend Robin Roan lived in Martinez. Between December 2005 and March 2006, she visited petitioner at his home in Vallejo approximately five times per month. From April 2006 to May 2006, she visited him at a home in Martinez four or five times. Once in February or March 2006, Roan accompanied petitioner to the Sherman Lake Resort in his brown pickup. He parked his truck in front of a sign marked "office," returned five to seven minutes later, and the two then drove away. Toward the end of April 2006, Roan gave defendant a legal self-help book on the rights and responsibilities of landlords.

*Outcome*

On September 15, 2006, the jury found petitioner guilty of manufacturing methamphetamine. The trial court subsequently found that petitioner had two prior "strike" convictions. On March 6, 2007, petitioner was sentence to 25 years to life pursuant to California's "Three Strikes" statute.

<u>Post-conviction Proceedings</u>

Petitioner timely appealed, and the California Court of Appeal for the Third Appellate District affirmed the conviction in an unpublished opinion filed April 29, 2009. Lodged Doc. 5.

4

1  Petitioner's timely petition for review was denied by the California Supreme Court on August 12,

2  2009.  Lodged Doc. 7.

3         Petitioner filed state petitions for writs of habeas corpus both before and after the

4  conclusion of direct review.  On December 7, 2006, following the jury's verdict but before

5  sentencing, petitioner filed a habeas petition in the superior court that was denied on January 7,

6  2007.  Lodged Docs. 8, 9.  He filed an amended petition in the same court on January 10, 2007,

7  that was denied on January 24, 2007.  Lodged Docs. 10, 11.  Both petitions were denied on

8  grounds that the claims were not cognizable in habeas as they could still be raised in the pending

9  criminal case.  Lodged Docs. 9, 11.

10        Following the conclusion of appellate review, petitioner filed a habeas petition in the

11  superior court on May 5, 2010.  Lodged Doc. 12.  That petition was denied in a reasoned order on

12  June 15, 2010.  Lodged Doc. 13.  On August 6, 2020, petitioner filed a habeas petition in the

13  California Court of Appeal for the Third Appellate District, Lodged Doc. 14, which denied relief

14  without comment on  August 26, 2010, Lodged Doc. 15.  On October 7, 2010, petitioner filed a

15  habeas petition in the California Supreme Court.  Lodged Doc. 16.  That petition was denied

16  without comment on June 22, 2011.  Lodged Doc. 17.

17        The federal petition was filed on December 23, 2011, and presents ten grounds for relief.

18  In his traverse, petitioner acknowledges that his eighth claim is unexhausted and states that this

19  claim is withdrawn.  ECF No. 21 at 16.[2]

20                    STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

21        28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of

22  1996 ("AEDPA"), provides in relevant part as follows:

23              (d) An application for a writ of habeas corpus on behalf of a person
                in custody pursuant to the judgment of a state court shall not be
24              granted with respect to any claim that was adjudicated on the merits
                in State court proceedings unless the adjudication of the claim –
25
                (1) resulted in  a  decision  that  was  contrary  to,  or  involved  an
26

27  ─────────────────
    [2] Citations to court documents refer to the page numbers assigned by the court's electronic
28  docketing system.

                                            5

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons.  Harrington v. Richter, 131 S. Ct. 770, 785 (2011).  State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary.  Id. at 784-785 (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)).  "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely."  Id. at 785.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003).  Clearly established federal law also includes "the legal principles and standards flowing from precedent."  Bradley v. Duncan, 315 F.3d 1091, 1101 (9th Cir. 2002) (quoting Taylor v. Withrow, 288 F.3d 846, 852 (6th Cir. 2002)).  Only Supreme Court precedent may constitute "clearly established Federal law," but circuit law has persuasive value regarding what law is "clearly established" and what constitutes "unreasonable application" of that law.  Duchaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000); Robinson v. Ignacio, 360 F.3d 1044, 1057 (9th Cir. 2004).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases."  Williams v. Taylor, 529 U.S. 362, 405 (2000).  A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case."  Id. at 407-08.  It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

1      Review under § 2254(d) is limited to the record that was before the state court.  Cullen v.

2   Pinholster, 131 S. Ct. 1388, 1398 (2011).  The question at this stage is whether the state court

3   reasonably applied clearly established federal law to the facts before it.  Id.  In other words, the

4   focus of the § 2254(d) inquiry is "on what a state court knew and did."  Id. at 1399.  Where the

5   state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the

6   state court's actual reasoning" and "actual analysis."  Frantz v. Hazey, 533 F.3d 724, 738 (9th

7   Cir. 2008) (en banc).  A different rule applies where the state court rejects claims summarily,

8   without a reasoned opinion.  In Richter, supra, the Supreme Court held that when a state court

9   denies a claim on the merits but without a reasoned opinion, the federal habeas court must

10   determine what arguments or theories may have supported the state court's decision, and subject

11   those arguments or theories to § 2254(d) scrutiny.  Richter, 131 S. Ct. at 786.

12      Under California law, a summary denial of a claim "on the merits" means that the

13   California Supreme Court assumed the truth of all factual allegations asserted in support of the

14   claim, and nonetheless concluded that those facts did not state a claim entitling the petitioner to

15   relief.  People v. Duvall, 9 Cal. 4th 464, 474 (1995); People v. Romero, 8 Cal. 4th 728, 737

16   (1994).  In other words, summary denial on the merits indicates a determination that the petitioner

17   has failed to state a prima facie case.  Duvall, 9 Cal. 4th at 475; Pinholster, 131 S. Ct. at 1402

18   n.12 (citing In re Clark, 5 Cal. 4th 750, 770 (1993)).  When a state court denies a claim for failing

19   to state a prima facie case, the absence of a prima facie case is the determination that must be

20   reviewed for reasonableness under § 2254(d).  Nunes, 350 F.3d at 1054-55.

21      Relief is also available under AEDPA where the state court predicated its adjudication of

22   a claim on an unreasonable factual determination.  Miller-El v. Dretke, 545 U.S. 231, 240 (2005);

23   Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir.), cert. denied, 543 U.S. 1038 (2004).  The

24   statute explicitly limits this inquiry to the evidence that was before the state court.   28 U.S.C. §

25   2254(d)(2).

26      To prevail in federal habeas proceedings, a petitioner must establish the applicability of

27   one of the § 2254(d) exceptions and also must also affirmatively establish the constitutional

28   invalidity of his custody under pre-AEDPA standards.  Frantz v. Hazey, 533 F.3d 724 (9th Cir.

7

1  2008) (en banc).  There is no single prescribed order in which these two inquiries must be

2  conducted.  Id. at 736-37.  The AEDPA does not require the federal habeas court to adopt any one

3  methodology.  Lockyer v. Andrade, 538 U.S. 63, 71 (2003).

DISCUSSION

4

5  I.        Claim One: Exclusion Of And/Or Failure To Obtain And Present Witness Testimony

6           A.  Petitioner's Allegations

7           Petitioner sought to present a third party culpability defense.  He maintained prior to trial,

8  as he does here, that a woman named Stacey and her boyfriend Moe had been staying at his

9  Winnebago and were responsible for the methamphetamine manufacturing.  He claims that he

10  had tried to evict Stacey and Moe, and was cleaning up after them when he was arrested.

11  Petitioner provided counsel with the names of individuals who could corroborate his story about

12  Stacey and Moe, and help locate them.  One of those individuals was petitioner's co-defendant,

13  Cominos, who pled guilty to methamphetamine manufacturing prior to petitioner's trial.

14           After Cominos's plea but before his sentencing hearing, the court held an Evidence Code

15  section 402 hearing where Cominos was called to testify.  3 RT 732-34.[3]  Cominos was asked

16  three questions: (1) whether he knew petitioner; (2) whether he ever resided at the Sherman Lake

17  Resort; and (3) whether he knew anyone named Stacey or Moe.  In response to each question,

18  Cominos asserted his Fifth Amendment right against self-incrimination.  The court declared him

19  unavailable as a witness.  3 RT 734.  Petitioner alleges that his right to compulsory process was

20  violated by the trial court's exclusion of Cominos's testimony on grounds of Fifth Amendment

21  privilege.  He alleges further that trial counsel provided ineffective assistance by failing to request

22  immunity for Cominos and/or a continuance of the trial.

23           Gary Darst was an acquaintance of petitioner's who told a defense investigator that he was

24  "personally aware" that Stacey was staying at petitioner's trailer, that he knew this "from

25  [petitioner]," and that petitioner spent most of his time in Pittsburg, Benicia and Concord (rather

26  than at Sherman Lake Resort).  3 RT 823.  The defense subpoenaed Darst to testify.  When he

27

28  [3] "RT" refers to the Reporter's Transcript on Appeal, lodged June 19, 2012.

1   failed to appear on September 6, 2006, the court issued a $100,000 bench warrant. 1 RT 285-86.

2   On September 14, the court declared Darst unavailable. 3 RT 840. Although the court found that

3   defense counsel had shown due diligence in attempting to secure Darst's appearance,[4] it denied a

4   defense motion to admit Darst's statement to the investigator. 3 RT 842-43. Petitioner alleges

5   that exclusion of the hearsay statement violated his compulsory process rights. He alleges further

6   that the trial court abused its discretion in denying the defense request for a continuance to locate

7   Darst. 3 RT 844.

8           Kelly Daniels lived in the Sherman Lake Resort trailer park. According to petitioner,

9   Daniels had interacted with Stacey there. A defense investigator tried to serve Daniels with a

10  subpoena but Daniels refused to accept it, so the investigator left it on the door. 3 RT 746-49

11  (under seal). Daniels never appeared at trial. Petitioner alleges that trial counsel provided

12  ineffective assistance in failing to locate Daniels and present his testimony, and that the trial court

13  violated petitioner's compulsory process rights by failing to compel his appearance.

14           B.  The Clearly Established Federal Law

15          The Constitution guarantees criminal defendants the right to present witnesses, and to

16  compel their attendance if necessary. Chambers v. Mississippi, 410 U.S. 284, 302 (1973);

17  Washington v. Texas, 388 U.S. 14, 19 (1967). The Compulsory Process Clause is one source of

18  the more general right of a criminal defendant to present a complete defense. Crane v. Kentucky,

19  476 U.S. 683, 690 (1986). A defendant's right to present witnesses may be limited to

20  accommodate other legitimate interests in the criminal trial process. Chambers, 410 U.S. at 295.

21          Trial courts enjoy broad discretion in ruling on continuance requests. Morris v. Slappy,

22  461 U.S. 1, 11-12 (1983). Only "an unreasoning and arbitrary 'insistence upon expeditiousness

23  in the face of a justifiable request for delay'" violates a defendant's constitutional rights. Id.

24  (quoting Ungar v. Sarafite, 376 U.S. 575, 589-90 (1964)).

25          To establish a constitutional violation based on the ineffective assistance of counsel, a

26  petitioner must show (1) that counsel's representation fell below an objective standard of

27  ─────────────

28  [4] The defense had information that Darst had entered a Bay Area rehabilitation program, but
    could not locate him at any of the facilities it contacted. 3 RT 815-21, 843-44.

reasonableness, and (2) that counsel's deficient performance prejudiced the defense. <u>Strickland v.</u> <u>Washington</u>, 466 U.S. 668, 692, 694 (1984). Prejudice means that the error actually had an adverse effect on the defense. There must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. <u>Id.</u> at 693-94.

C. <u>The State Court's Ruling</u>

Like all of petitioner's claims with the exception of Claim Ten, this claim was raised on direct appeal. Because the California Supreme Court denied review without comment, this court "looks through" the denial to the opinion of the California Court of Appeal. <u>See</u> <u>Ylst v.</u> <u>Nunnemaker</u>, 501 U.S. 797 (1991). As the last reasoned state court decision on the merits, the opinion on appeal is the state court adjudication that must be reviewed for reasonableness under 28 U.S.C. § 2254(d). <u>Ortiz v. Yates</u>, 704 F.3d 1026, 1034 (9th Cir. 2012).

The appellate court ruled as follows regarding petitioner's contentions involving co-defendant Cominos:

> 1. *The Court Did Not Violate Defendant's Right To Compulsory Process With Respect To Cominos*
>
> Defendant contends the court denied him his right to compulsory process by excluding Cominos's testimony based on the assertion of his Fifth Amendment privilege. Defendant has forfeited his contention and, in any event, the contention fails on its merits.
>
> When Cominos thrice asserted his right against self-incrimination and the court found him unavailable, defense counsel did not argue that defendant's right to compulsory process had been denied. Rather, he simply stated, "this will be fruitless." Given this record, defendant has failed to preserve his contention for review. (<u>People v. Rudd</u> (1998) 63 Cal.App.4th 620, 629.)
>
> His argument fares no better on the merits. The crux of defendant's argument focuses on what he claims was the court's lack of a "particularized inquiry" with respect to each of the three questions. We find no error.
>
> "Although the court should make a particularized inquiry as to whether or not a claim of privilege is well founded [citation], in order to approve invocation of the privilege 'it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.'" (<u>People v. Lucas</u> (1995) 12 Cal.4th 415, 454.)

10

The damaging implications of the three questions asked of Cominos were apparent.  As to the first question, if Cominos were to answer that he knew defendant, it would tend to establish his relationship with defendant, who was implicated in manufacturing methamphetamine at both Cominos's  Pace Arrow and defendant's Winnebago.  As to the second question, if Cominos were to answer that he resided at the Sherman Lake Resort, it would tend to establish his ongoing presence at a methamphetamine laboratory housed in his Pace Arrow and implicate him in the manufacturing.  As to the third question, if Cominos were to answer that he knew Stacy and/or Moe and defendant presented evidence that they were responsible for the methamphetamine manufacturing at either the Winnebago or the Pace Arrow, Cominos could also be implicated in the manufacturing given the testimony that Cominos was present at both motor homes.  If he were to answer that he did not know them, it would tend to suggest Stacy and/or Moe did not exist, which would then suggest it was Cominos and/or defendant who manufactured the methamphetamine at the motor homes.  Thus, because the proposed testimony had a tendency to incriminate Cominos, the court could not compel Cominos to answer the questions.  (People v. Cudjo (1993) 6 Cal.4th 585, 617.)

2. *Defense Counsel Was Not Ineffective*

Defendant contends his counsel was ineffective for failing to request immunity for Cominos in exchange for his testimony or for failing to request a continuance of defendant's trial until Cominos's right to appeal his own conviction had expired.  Defendant's contention fails because he has not proved his counsel's performance was deficient, the first prong of an ineffective assistance of counsel analysis. (Strickland v. Washington (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693].)

As to defendant's first claim, trial counsel's performance was not deficient because "the defendant has no power to force the prosecution to grant immunity to defense witnesses" (People v. Lucas, supra, 12 Cal.4th at p. 459), and there is no California precedent stating that judges have the power to grant such immunity (see People v. Stewart (2004) 33 Cal.4th 425, 468).

Even if we were to assume, as the California Supreme Court has done, that "judicially conferred use immunity might possibly be necessary to vindicate a criminal defendant's rights to compulsory process and a fair trial" (People v. Stewart, supra, 33 Cal.4th at p. 468), defendant cannot show counsel's performance was deficient because under any theory warranting a judicial grant of immunity, the proffered testimony must be clearly exculpatory (id. at pp. 469-470).  Here, defendant merely speculates that Cominos would have testified that "Stacy and Moe were living as holdover tenants in his motor home and that they, and not [defendant] were present when the methamphetamine manufacture took place." This speculation is not sufficient to show testimony that would be clearly exculpatory.

As to defendant's second claim of ineffective assistance for failing to request a continuance of defendant's trial until Cominos's right to

11

appeal his own conviction had expired, counsel was not deficient because it was unlikely a continuance would have been granted. (See People v. Taylor (1984) 162 Cal.App.3d 720, 726 [counsel is not required to raise futile motions].) A continuance would have delayed the trial a minimum of 73 days -- 13 days for Cominos to be sentenced plus another 60 days for expiration of Cominos's right to appeal. A two-and-one-half-month delay in defendant's trial would have inconvenienced jurors, witnesses, and the court, and it would have jeopardized the People's right to a speedy trial. (See Pen. Code, § 1050, subd. (a).) Under these circumstances, defense counsel cannot be faulted for failing to request a continuance.

Lodged Doc. 5 at 8-11.

The appellate court ruled as follows regarding petitioner's contentions involving potential witness Gary Darst:

1. *The Court Did Not Deny Defendant's Right To Compulsory Process By Failing To Secure Darst's Presence*

Defendant contends the court denied him his right to compulsory process by failing to secure Darst's presence at trial. He relies on People v. Bossert (1910) 14 Cal.App. 111, which held a "defendant was deprived of a constitutional right" when the trial court ruled the defendant "was not entitled to the process of the court compelling [the] attendance [of subpoenaed witnesses who were material and important to the defendant's case] and forced the defendant to submit his case to the jury without the benefit of their oral testimony." (Id. at p. 116.)

Defendant claims his case is "indistinguishable" from Bossert. But in Bossert the trial court never issued a bench warrant for the subpoenaed witnesses. (People v. Bossert, supra, 14 Cal.App. at p. 113.) Here, the court issued a bench warrant for Darst. "Where compulsory process has been issued, served and has proved ineffective, and the court has issued a bench warrant for the witness," the court cannot be "chargeable with error because the defendant failed to secure the witness." (People v. Avila (1967) 253 Cal.App.2d 308, 330.)

2. *The Court Did Not Deny Defendant His Right To A Fair Trial By Excluding Darst's Statement*

Defendant contends the court denied him a fair trial by excluding Darst's statement because it was "critical to [his] defense and bore persuasive assurances of trustworthiness." In making his argument, defendant relies on two cases involving declarations against penal interest that were excluded because state court evidentiary rules did not recognize that hearsay exception. (Chambers v. Mississippi (1973) 410 U.S. 284, 298 [35 L.Ed.2d 297, 311]; Green v. Georgia (1979) 442 U.S. 95 [60 L.Ed.2d 738].) In those cases, the United States Supreme Court held that unreasonable state rules of evidence do not constitutionally preclude admission of a declaration against penal interest that is crucial to the defense and bears "persuasive

12

assurances of trustworthiness."  (Chambers, at p. 302 [35 L.Ed.2d at p. 313]; see Green, at p. 97 [60 L.Ed.2d at p. 741].)

Here, however, defendant makes no attempt to explain why Darst's statements bore any indicia of trustworthiness. He simply asserts that they did. Where a defendant fails to make a threshold showing that the out-of-court statement is trustworthy, exclusion of the statement does not violate the defendant's constitutional rights. (People v. Lawley (2002) 27 Cal.4th 102, 154-155.)

3. *The Court Did Not Abuse Its Discretion By Denying Defendant's Request For A Continuance To Locate Darst*

Defendant claims the court abused its discretion in denying his request for a continuance to locate Darst.  There was no error.

On August 30, 2006, Darst told a defense investigator he was going to the Salvation Army drug rehabilitation program in San Francisco for six months and that for the first 30 days of the program, he would be "restricted."  On September 14, 2006, in response to the court's inquiry as to what had been done since September 13 to track Darst down, defense counsel stated that on September 13, a defense investigator went to Darst's last known address, but Darst was not there. Thereafter, defense counsel spoke to Robin Roan (defendant's close friend who was Darst's former girlfriend), who said Darst was at the Salvation Army drug rehabilitation program in San Francisco. Defense counsel contacted a representative from the Salvation Army program who said Darst was not there.  When the court inquired whether defense counsel was certain Darst was not there or whether somebody was simply telling him Darst was not there, defense counsel replied that the "tone of the conversation . . . was that he -- he affirmatively was not there.  I spoke to somebody at intake who asked me, um, his full name and verified the correct spelling of his last name.  Um, she then said, Hang on, I will check my files. She put the phone down, came back a few minutes later, and said, he is not at our facility, or words to that effect."

Defense counsel asked for a continuance "to try to find [Darst.]" The court denied the request because there was "no reasonable idea as to where [Darst] might be" and therefore there was no "lead at this point in time as to where we might begin the search."

On appeal, defendant contends the court's ruling was error, speculating "all indications pointed to the likelihood Darst was . . . at the Salvation Army [drug] rehabilitation program [in San Francisco.]" His speculation, however, was refuted by defense counsel's later investigation that dispelled Darst's presence at the program. Given this evidence and the lack of other leads about Darst's whereabouts, the trial court did not abuse its discretion in denying a continuance to locate Darst.

Lodged Doc. 5 at 12-15

The appellate court ruled as follows regarding petitioner's contentions involving potential witness Kelly Daniels:

13

1    *1. Defendant Has Not Established Counsel Was Ineffective In Failing To Procure Daniels As A Witness*

2

3    Defendant contends trial counsel was ineffective in failing to either request a continuance to locate Daniels if service of the subpoena was insufficient or, if service was sufficient, to request a bench warrant to secure Daniels's presence at trial.  Defendant has failed to prove counsel's performance was deficient under either scenario.

4

5    At a hearing held pursuant to People v. Marsden (1970) 2 Cal.3d 118, on September 13, 2006, defense counsel told the court that his investigator attempted to serve Daniels by leaving the subpoena on the door of his trailer.  The trial court responded by stating, "Maybe further attempts can be made."  At a later new trial motion, the court noted it had reviewed the Marsden transcripts and asked defense counsel, "What did you do to talk to or contact Mr. Daniels to seek information about Stacy or Moe?" Defense counsel responded that he did not "have those notes in front of [him]," but explained his "recollection" was that he sent an investigator to the Sherman Lake Resort who contacted Daniels.  Daniels "denied any knowledge of the case or [defendant]."  The investigator "attempted to serve [Daniels] with a subpoena . . . , [h]e refused to accept service, . . . [so t]he subpoena was left on his front door."  The court then asked whether "anything happen[ed] after that with Mr. Daniels?"  Counsel responded, "No, as I recall."

6

7

8

9

10

11

12

13

14   The problem with establishing deficient performance on this record is that defense counsel's performance was unclear.  Because he did not have his notes, defense counsel was unsure about what steps he took to ensure Daniels's attendance at trial.  And his response to the court's final question about whether anything else happened was ambiguous.  It could have meant either that the investigator made further efforts to subpoena Daniels and they were unsuccessful or that the investigator simply failed to make any further efforts to subpoena Daniels. Given the state of this record, we cannot say defense counsel's performance with respect to securing Daniels's presence was deficient.  Moreover, in light of Daniels's denial of any knowledge about the case, defendant has failed to show that securing Daniels's presence at trial could have helped defendant.

15

16

17

18

19

20

21   *2. Defendant Has Not Established The Trial Court Erred In Failing To Issue A Bench Warrant For Daniels*

22

23   Also because of the state of the record, we cannot say the trial court erred in failing to assure the process of the court to compel attendance of Daniels. The record is ambiguous as to whether Daniels was successfully served.  Although the defense investigator "attempted to serve [Daniels] with a subpoena . . . , [h]e refused to accept service, . . . [so t]he subpoena was left on his front door."  It is unclear what happened after that.  If Daniels was not adequately served, the court had no basis on which it could issue a bench warrant.  Because it is defendant's burden as the appellant to provide an adequate record on appeal to show error (Forrest v. Department of Corporations (2007) 150 Cal.App.4th 183, 194-195) and the record does not reflect whether Daniels was successfully

24

25

26

27

28

14

1    served, defendant cannot show the court erred in failing to issue a
2    bench warrant for Daniels.

3    Lodged Doc. 5 at 16-18.

4         D. Procedural Default

5         Respondent contends that part of this claim regarding Cominos is procedurally barred,

6    because the state court denied it for failure to preserve the issue.  As a general rule, a federal

7    habeas court "will not review a question of federal law decided by a state court if the decision of

8    that court rests on a state law ground that is independent of the federal question and adequate to

9    support the judgment."  Calderon v. United States District Court (Bean), 96 F.3d 1126, 1129 (9th

10   Cir.1996) (citing Coleman v. Thompson, 501 U.S. 722, 729 (1991)), cert. denied, 520 U.S. 1204

11   (1997).

12        A petitioner can overcome a procedural default by demonstrating cause and prejudice.

13   Coleman v. Thompson, 501 U.S. 722, 753 (1991).  Here, petitioner asserts ineffective assistance

14   of counsel as cause for any default.  Ineffective assistance of counsel ("IAC") can, if pleaded and

15   proved, establish cause.  Murray v. Carrier, 477 U.S. 478, 488 (1986); Edwards v. Carpenter, 529

16   U.S. 446, 451 (2000).  Both to overcome default and to support relief on his IAC claims,

17   petitioner must establish that counsel performed unreasonably and that he was prejudiced by the

18   defective performance.  See Strickland v. Washington, 466 U.S. 668, 692, 694 (1984).  This

19   inquiry necessarily requires analysis of the underlying issue regarding Cominos's failure to

20   testify.

21        A federal court may bypass consideration of a procedural bar issue in the interests of

22   judicial economy, where the asserted default presents complicated questions and the other issues

23   are resolvable against the petitioner.  Lambrix v. Singletary, 520 U.S. 518, 522−25 (1997);

24   Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002).  Here, because the merits of the

25   defaulted issues must be evaluated in any case, and because the default issue would be difficult

26   ////

27   ////

28   ////

15

1  and excessively time-consuming to address,[5] the undersigned exercises discretion to bypass the

2  procedural default issue and proceed to the merits.

3                E.  Objective Reasonableness Under § 2254(d)

4                    1.  *Desmond Cominos*

5         The state court did not unreasonably apply the controlling federal law.  Petitioner's right

6  to present witnesses does not trump the witness's right to invoke the Fifth Amendment privilege

7  against self-incrimination.  See United States v. Trejo-Zambrano, 582 F.2d 460, 464 (9th Cir.)

8  (right to compulsory process does not include right to compel witness to waive Fifth Amendment

9  privilege), cert. denied, 439 U.S. 1005 (1978).  A trial court's refusal to require a witness to

10  testify after invoking the privilege does not necessarily violate the Compulsory Process Clause,

11  and the state court's rejection of such a claim does not run afoul of any clearly established

12  Supreme Court precedent.  See Arredondo v. Ortiz, 365 F.3d 778, 779, 782-83 (9th Cir.)

13  (rejecting similar claim), cert. denied, 543 U.S. 892 (2004).

14         As the Arredondo court explained, the Supreme Court has recognized that a defendant's

15  right to present witnesses may be limited to accommodate other legitimate interests in the

16  criminal trial process.  Id. at 783 (citing Chambers, 410 U.S. at 295).  One such interest is the

17  interest in protecting the constitutional rights of witnesses.  The Supreme Court has specifically

18  emphasized the need to liberally construe the Fifth Amendment privilege.  Id. (citing Hoffman v.

19  United States, 341 U.S. 479, 487 (1951)).  Petitioner's claim, like that in Arrendondo, accordingly

20  fails.[6]

21         No clearly established federal law mandates a judicial grant of immunity for a witness

22

23  [5] Petitioner has not briefed the adequacy of the state forfeiture rule, or other procedural bars at

24  issue on other claims, to support a default.  This is rarely a straightforward question.  See Bennett
v. Mueller, 322 F.3d 573 (9th Cir. 2003) (amended).

25  [6] When balancing the Sixth Amendment right of the accused and the Fifth Amendment right of a
witness, the trial court must inquire into the existence of a good-faith basis for invocation of the

26  privilege.  See United States v. Vavages, 151 F.3d 1185, 1192 (9th Cir. 1998).  Where there is
such a good faith basis, the witness may rely on the privilege.  Id.  Here, the appellate court found

27  that the good faith basis for Cominos's invocation was apparent from the context.  This was not
an unreasonable conclusion given Cominos' status as co-defendant and the evidence connecting

28  the two men and the methamphetamine manufacturing operations in the two trailers.

1   who would otherwise refuse to incriminate himself.  See Allen v. Woodford, 395 F.3d 979, 996

2   (9th Cir.), cert. denied, 546 U.S. 858 (2005) (such a rule would be Teague-barred "new rule").

3   Accordingly, the state courts' rejection of petitioner's legal theory in this regard cannot have been

4   objectively unreasonable.  See Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (per curiam)

5   (if there is no Supreme Court precedent that controls a legal issue raised by a habeas petitioner in

6   state court, the state court's decision cannot be contrary to, or an unreasonable application of,

7   clearly established federal law).

8        Because there was no legal basis to compel Cominos's testimony, counsel cannot have

9   performed unreasonably in failing to do so.  And as the state court noted, petitioner did not show

10  that Cominos would have presented clearly exculpatory evidence if he had testified under a grant

11  of immunity.[7]  Accordingly, petitioner established neither deficient performance nor prejudice

12  under Strickland, and the state court's rejection of the IAC claim was not unreasonable.  To the

13  extent that petitioner argued counsel was ineffective for failing to seek a continuance of his trial

14  until Cominos's own conviction was final, the appellate court found it unlikely that such a request

15  would have been granted.  That conclusion, based on California law, is unreviewable here and

16  defeats petitioner's claim.

17                     2.  *Gary Darst*

18       Where a trial court does not affirmatively bar a defendant from presenting a witness, but

19  rather fails to provide a witness for the defense, the Compulsory Process Clause is not violated.

20  See Alcala v. Woodford, 334 F.3d 862, 880-81 (9th Cir. 2003) (reversing finding that petitioner's

21  rights were violated by trial court's failure to appoint an independent expert).  Here petitioner

22  served Darst with a subpoena, and the trial court subsequently issued a bench warrant.  It was not

23  objectively unreasonable of the state appellate court to conclude that petitioner's right to

24  compulsory process was satisfied by issuance of the bench warrant.

25       It was also not unreasonable for the state court to reject petitioner's claim that his rights

26  were violated by the exclusion of Darst's hearsay statement.  The state court distinguished

27

---

[7] Petitioner made no attempt to expand this claim in state habeas proceedings with an affidavit or other extra-record evidence of what exculpatory testimony Cominos would have provided.

28

17

1  Chambers v. Mississippi and Green v. Georgia, and held that petitioner had made no showing that

2  Darst's statements were trustworthy.  The state court was correct that petitioner's claim of

3  trustworthiness was unsupported.[8]  The state court was also correct to distinguish Chambers and

4  Green on the constitutional issue, because those precedents involved unconstitutional restrictions

5  on jury consideration of statements against penal interest.  See Chambers, 410 U.S. at 302; Green

6  v. Georgia, 442 U.S. 95, 97 (1979).  Darst's statements to the investigator did not implicate his

7  own penal interests, so Chambers and Green are inapposite.  The state court therefore did not

8  unreasonably apply them.

9        Finally, the appellate court found that the trial court had not abused its discretion by

10  refusing a continuance to locate Darst.  The record here does not come close to presenting "an

11  unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for

12  delay."  See Morris, 461 U.S. at 11-12.  Accordingly, the state court's ruling does not

13  unreasonably apply federal constitutional principles.

14              3.  *Kelly Daniels*

15        The state court did not unreasonably reject petitioner's Strickland claim based on the

16  failure to locate and produce Daniels at trial.  The appellate court found that the trial record, on

17  which petitioner relied, did not include sufficient facts to support either the deficient performance

18  or prejudice prongs of ineffective assistance.[9]  That conclusion was entirely correct.  Petitioner

19  has never supplemented his claim in habeas with extra-record evidence to demonstrate that

20  Daniels could have been located or would have provided exculpatory evidence.  Under any

21  standard of review, this claim fails.

22        The appellate court also rejected as unsupported petitioner's claim that the trial court erred

23  in failing to issue a bench warrant for Daniels.  Even if this court applies a de novo standard of

24

25  [8] Petitioner made no attempt to expand this claim in state habeas proceedings with an affidavit or
26  other extra-record evidence establishing the trustworthiness of the testimony Darst allegedly
     would have provided.

27  [9] At the hearing on petitioner's motion for a new trial, which the appellate court does not discuss
     in this context, the trial court specifically found that trial counsel had been diligent in attempting
28  to locate Daniels, and that Daniels had denied knowing petitioner.  4 RT 1164.

1   review, on grounds that the state court did not reach the federal constitutional issue,[10] there is no

2   basis for federal habeas relief.  The Compulsory Process Clause does not require the court to sua

3   sponte issue process or locate and produce defense witnesses.  See Alcala v. Woodford, 334 F.3d

4   at 880-81.  Petitioner is not entitled to relief on this claim.

5        II.        Claim Two: Restriction Of Robyn Roan's Testimony

6             A. Petitioner's Allegations

7        Petitioner's friend Robin Roan testified in support of the defense theory that people other

8   than petitioner had been staying in his Winnebago and were responsible for the methamphetamine

9   manufacturing operation.  At an Evidence Code section 402 hearing, 3 RT 763-815, Roan

10  testified that she became aware that defendant was having problems with Stacy and Moe staying

11  at his motor home.  She did not know Moe or Stacy, and learned that Stacy was living in the

12  motor home because defendant and a person named Sherry Gomes told her so.  Based on this lack

13  of personal knowledge, the court excluded Roan's testimony about Stacy and Moe.[11]  3 RT 812-

14  13.

15       On recross-examination during trial, Roan testified she was convicted of petty theft with a

16  prior in June 2003 and then volunteered that the conviction was "right before [she] went into the

17  program."  3 RT 863.  During redirect examination, defense counsel asked Roan "what program

18  is that," but Roan did not answer because the court sustained the prosecutor's relevancy

19  objection.  3 RT 864.

20       Petitioner contends that his right to present a defense was unconstitutionally impaired by

21  these limitations on Roan's testimony.

22             B. The Clearly Established Federal Law

23        The Constitution guarantees to criminal defendants the right to present a defense.

24

25  [10] See Cone v. Bell, 556 U.S. 449, 472 (2009).

    [11] Roan was permitted to testify that she had visited petitioner in locations other than the trailer
26  park several times in the weeks before his May 2006 arrest; that on one occasion she had gone
    with petitioner to the Sherman Lake Resort, where he had parked his truck in front of a sign
27  marked "office" and gone inside for five to seven minutes before they drove away; and that in
    April of 2006 she had given petitioner a legal self-help book on the rights and responsibilities of
28  landlords.  This was the full extent of the evidence presented to support the defense theory.

1 | Chambers v. Mississippi, 410 U.S. 284 (1973); Crane v. Kentucky, 476 U.S. 683, 690 (1986).

2 | This includes the right to present reliable evidence that another person committed the charged

3 | crime.  Holmes v. South Carolina, 547 U.S. 319 (2006).  State rules establishing standards for the

4 | admissibility of third-party culpability evidence are constitutionally permissible as long as they

5 | are rationally related to the legitimate purpose of excluding evidence that has only a weak logical

6 | connection to the central issues at trial.  Id. at 326-30.

7 |              C.  The State Court' Ruling

8 |       The opinion of the California Court of Appeal is the state court decision subject to

9 | AEDPA review.  See Ortiz v. Yates, 704 F.3d at 1034.  The appellate court affirmed the trial

10 | court's ruling at the Evidence Code section 402 hearing:

11 |              The court's ruling was correct. Roan's testimony was inadmissible
12 |              because she lacked "personal knowledge of the matter." (Evid.
     |              Code, § 702, subd. (a).)

13 | Lodged Doc. 5 at 19.

14 |       The Court of Appeal also held that the trial court properly excluded Roan's testimony

15 | about entering a program:

16 |              On appeal, defendant claims, '[a]n explanation as to the nature of
17 |              the program was necessary to rehabilitate [Roan] so as to illustrate
     |              for the jury that, as a result of attending the program, she was now
18 |              an employed, productive member of society who no longer engaged
     |              in felony behavior and was more likely to be telling the truth
19 |              regarding her testimony.'

20 |              Defendant's argument is speculative.  We have no record as to the
     |              nature of the program, whether Roan completed it, or anything as to
21 |              its efficacy.  And defendant has not provided a settled statement of
     |              the unreported sidebar.  It is defendant's burden to show error by
22 |              providing an adequate record on appeal, and he has failed to do so.
     |              (Ballard v. Uribe (1986) 41 Cal.3d 564, 574-575.)  On the record
23 |              we have, the evidence about Roan's program was irrelevant, and the
     |              court therefore did not err in excluding it. (Evid. Code, §§ 210,
24 |              350.)

25 | Lodged Doc. 5 at19-20.

26 |              D.  Procedural Default

27 |       Respondent contends that this claim is procedurally barred.  For the same reasons

28 | explained previously regarding Claim One, the court exercises discretion to bypass the default

1   issue and proceed to the merits.  See Lambrix v. Singletary, 520 U.S. at 522−25; Franklin v.

2   Johnson, 290 F.3d at 1232.

3                    E.  Objective Reasonableness Under § 2254(d)

4        The appellate court did not explicitly address the merits of the constitutional claim that the

5   trial court's limitations on Roan's testimony violated petitioner's right to present a defense.

6   Whether this issue is reviewed under § 2254(d) as an unexplained rejection of the constitutional

7   claim, see Richter, 131 S.Ct. at 786, or de novo as a claim unadjudicated on the merits by the state

8   court, see Cone v. Bell, 556 U.S. 449, 472 (2009), the result is the same.

9        Exclusion of Roan's testimony about Stacy and Moe cannot have impaired petitioner's

10  right to present a defense because Roan was not a percipient witness to Stacy and Moe's alleged

11  use of petitioner's trailer to cook methamphetamine.  The trial court quite properly excluded the

12  testimony for lack of personal knowledge; the proffered testimony also failed to qualify under

13  California law as admissible third party culpability evidence.  Under California law, a criminal

14  defendant has a right to present evidence of third party culpability if that evidence is capable of

15  raising a reasonable doubt regarding his own guilt.  See Spivey v. Rocha, 194 F.3d 971, 978 (9th

16  Cir. 1999) (citing People v. Hall, 41 Cal. 3d 826, 833 (1986)), cert. denied, 531 U.S. 995 (2000).

17  In order for evidence pointing to another suspect to be admissible, however, "there must be direct

18  or circumstantial evidence linking the third person to the actual perpetration of the crime."  Hall,

19  41 Cal. 3d at 833.  Motive or opportunity alone is not enough.  Spivey, 194 F.3d at 978 (citing

20  Hall, 41 Cal. 3d at 833).  There is no constitutional violation in the application of these standards

21  unless they are applied arbitrarily or in a manner disproportionate to the reliability purposes they

22  are designed to serve.  See Holmes, 547 U.S. at 326-27.  Because petitioner presented no

23  evidence linking Stacey and Moe to the actual perpetration of the crime, Roan's testimony was

24  not admissible.  Because exclusion of Roan's testimony served legitimate reliability goals in light

25  of her lack of personal knowledge, it did not impair petitioner's constitutional rights.

26       The exclusion of Roan's explanation about her "program" was also properly upheld on

27  appeal and did not impair petitioner's right to present a defense.  Petitioner did not make a record

28  in the trial court of what Roan would have said, nor did he expand the claim in habeas with an

1  affidavit.  Even assuming that Roan's answer would have negated any adverse credibility

2  inference generated by her prior conviction, it cannot conceivably have affected the verdict.  See

3  Brecht v. Abrahamson, 507 U.S. 619 (1993) (to support habeas relief, constitutional error must

4  have had substantial and injurious effect on jury's verdict).  Roan's testimony was far too slender

5  a reed on which to stake a third party culpability defense in any case, and the trial court's rulings

6  did not render the trial fundamentally unfair.  See Estelle v. McGuire, 502 U.S. 62 (1991)

7  (evidentiary errors violate due process only where they render the trial fundamentally unfair).

8        Overall, Claim Two fails because the U.S. Supreme Court has not established a

9  controlling legal standard for evaluating a claim that exclusion of defense evidence violated the

10  right to present a complete defense.  See Brown v. Horell, 644 F.3d 969, 983 (9th Cir.), cert.

11  denied, 132 S.Ct. 593 (2011).  In the absence of such authority, § 2254(d) bars relief.  Id.

12  III.    Claim Three: Prosecutor's Misstatement in Closing Argument

13      A. Petitioner's Allegations

14        Following co-defendant Cominos's assertion of the Fifth Amendment privilege, the

15  prosecutor requested an order from the court reminding counsel that "neither party can comment

16  on the unavailability of a witness that they know. . . has been deemed. . . unavailable to testify."

17  3 RT 735.  During rebuttal closing argument, the prosecutor commented as follows on the defense

18  failure to call witnesses:

19      [THE PROSECUTOR:] In a criminal case, the burden always stays
20  with the People.  I have to prove each and every element beyond a reasonable doubt.  That never changes.  But from the moment that brings us here, all parties have the power of the Court to subpoena
21  folks to come in and to give testimony, and offer testimony. Defense called Ms. Roan.  When a party fails to do something or to
22  call someone who logically would be connected, you get to ask yourself about that.
23
24      [DEFENSE ATTORNEY]: Your Honor, I'm going to object to this as improper argument, shifting the burden.

25      THE COURT: Overruled.

26      [THE PROSECUTOR]: You -- you can consider the failure to
27  present logical evidence or witnesses in a case, if appropriate.  If he didn't live there, if it is not his motor home, where are those
28  witnesses?  I'm certainly not in a position to know where he was to subpoena those folks.

4 RT 945.

Petitioner alleges that the prosecutor's reference to unavailable witnesses consisted misconduct.

### B.  The Clearly Established Federal Law

A prosecutor's improper statements violate the constitution only where they "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) (internal quotation marks omitted)).  It is not enough that the remarks were "undesirable or even universally condemned." Darden, 477 U.S. at 181.  Fundamental fairness must be assessed in context of the trial as a whole, including the weight of the evidence, the defense opportunity to respond, and the instructions given to the jury. Id. at 181-82.

### C.  The State Court's Ruling

The opinion of the California Court of Appeal is the state court decision subject to AEDPA review.  See Ortiz v. Yates, 704 F.3d at 1034.  The appellate court ruled as follows:

> . . . [D]efendant argues that the prosecutor's rebuttal argument, in light of the prosecutor's knowledge that Cominos, Darst, and Daniels were unavailable, constituted "blatant misconduct."
>
> Defendant is incorrect.  As the prosecutor's follow up argument indicates, the prosecutor was focused on defendant's failure to call witnesses who could prove defendant did not live in the Winnebago and that the Winnebago was not his.  The witnesses defendant could have called were not limited to Cominos, Darst, and Daniels and included others such as neighbors who lived by him, friends who visited him elsewhere than the Winnebago, and landlords, rental agencies, or mortgage companies to whom he paid room and board.  Because the prosecutor did not focus on evidence that only these three witnesses could have provided, the prosecutor's comments about defendant's failure to call material witnesses did not amount to misconduct under either state or federal law.  (See People v. Samayoa (1997) 15 Cal.4th 795, 841.)

Lodged Doc. 5 at 21.

### D.  Objective Reasonableness Under § 2254(d)

The court of appeal reasonably evaluated this claim.  The prosecutor did not ask the jury, either directly or by implication, to draw an adverse inference from petitioner's failure to present exculpatory testimony from any of the specific individuals who had been declared unavailable.

23

1   Instead, he pointed to petitioner's general failure to produce any witnesses to support his theory

2   that someone else had been living in his trailer and using it to cook meth.  Although the

3   prosecutor was aware that petitioner had made unsuccessful efforts to produce three such

4   (putative) witnesses, he was not therefore precluded from commenting on the almost total

5   absence of proof to support the defense theory.  A reasonable juror would likely have wondered

6   why the defense presented no testimony from other trailer park residents regarding Stacey and

7   Moe's alleged use of the Winnebago, and would most likely have interpreted the prosecutor's

8   comment as highlighting this evidentiary vacuum rather than challenging petitioner's failure to

9   put Cominos on the stand for that purpose.[12]  Moreover, the jury was specifically instructed that

10  "[n]either side is required to call all witnesses who may have information about the case. . ."  2

11  CT 373.[13]  In light of this instruction, there is little chance that the jury would have been drawn an

12  improper inference on the basis of the prosecutor's comment.  In light of the record as a whole,

13  the court of appeal's decision does not constitute an unreasonable adjudication of the fundamental

14  fairness issue that establishes the constitutional bottom line.

15      IV.     Claim Four: Impairment Of Right To Present Third-Party Liability Defense

16              A.  Petitioner's Allegations

17          Petitioner alleges (1) that his right to present a defense was violated by the trial court's

18  modification and placement of a defense pinpoint instruction, and (2) that he was denied

19  meaningful appellate review of this matter by the failure to transcribe jury instructions.  The

20  background facts are as follows.

21          The parties entered into the following stipulation on the record: "[T]he court reporter need

22  not transcribe the jury instructions as I read them.  I will come back to each of you once I have

23  concluded reading them if you believe I made an error at any point in my reading."  3 RT 871.

24  Thereafter, the court read the instructions to the jury without transcription, and the parties agreed

25  that the court "read the[] instructions substantially as written" without omitting anything.  4 RT

26

27  [12] The jury was unaware of the existence of Gary Darst and Kelly Daniels, so cannot have
    inferred that the prosecutor was referring to them.

28  [13] "CT" refers to the Clerk's Transcript on Appeal, lodged June 19, 2012.

949.

However, in response to a note from the jury during deliberations, the court realized it had forgotten to instruct pursuant to CALCRIM Nos. 400 and 401 regarding aiding and abetting. The parties had previously agreed these instructions were appropriate.  The court said it intended to give those instructions now.  4 RT 956.  Over defense objection that any error in failing to give the instruction was "waived" by the parties' agreement that the instructions as read by the court were correct, the court instructed the jury pursuant to CALCRIM Nos. 400 and 401.  4 RT 957, 959-61.  The court told the jury it had inadvertently omitted these instructions earlier and the jury should assume the court would have read them had it remembered.  Id. at 961.

The facts related to the defense pinpoint instruction are as follows.  Defense counsel requested the following instruction on third party liability:

> You have heard evidence that a person other than the defendant committed the offense with which the defendant is charged.  The defendant is not required to prove the other person's guilt.  It is the prosecution that has the burden of proving the defendant guilty beyond a reasonable doubt.  Therefore, the defendant is entitled to an acquittal if you have a reasonable doubt as to the defendant's guilt. *Evidence that another person committed the charged offense may by itself leave you with a reasonable doubt as to the defendant's guilt. However, its weight and significance, if any, are matters for your determination.*  If after considering all of the evidence, including any evidence that another person committed the offense, you have a reasonable doubt that the defendant committed the offense, you must find the defendant not guilty.

3 RT 838-39; 2 CT 381-83[14] (italics added).

The court refused to give the entire pinpoint instruction and agreed to give only the italicized portion.  It explained that the proposed pinpoint instruction "contain[ed] a substantial amount of verbiage."  The court explained that the omitted portion of the proposed instruction "wasn't given because it's already provided in the instructions that are being given as part of the form instructions."  3 RT 867-68.

As to the sequence of instructions, the court read CALCRIM No. 373 regarding other perpetrators, then read CALCRIM No. 375 regarding evidence of defendant's uncharged offenses,

---

[14] "CT" refers to the Clerk's Transcript on Appeal.

1  which included the italicized portion of the pinpoint instruction at the beginning of its last

2  paragraph.  2 CT 375-76.

3        B.  The Clearly Established Federal Law

4        The constitutional right to present a defense includes the right to present reliable evidence

5  that another person committed the charged crime.  Holmes v. South Carolina, 547 U.S. 319

6  (2006).

7        Erroneous jury instructions do not support federal habeas relief unless the infirm

8  instruction so infected the entire trial that the resulting conviction violates due process.  Estelle v.

9  McGuire, 502 U.S. 62, 72 (1991) (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973)).  See also

10  Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that

11  the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated

12  some [constitutional right]'").  The challenged instruction may not be judged in artificial

13  isolation, but must be considered in the context of the instructions as a whole and the trial record

14  overall.  Estelle, 502 U.S. at 72.  Moreover, relief is only available if there is a reasonable

15  likelihood that the jury has applied the challenged instruction in a way that violates the

16  Constitution.  Id. at 72–73.

17        C.  The State Court's Ruling

18        The opinion of the California Court of Appeal is the state court decision subject to

19  AEDPA review.  See Ortiz v. Yates, 704 F.3d at 1034.  The appellate court ruled as follows

20  regarding the failure to transcribe jury instructions:

21          …[D]efendant contends he was deprived of meaningful appellate
            review and due process by the court's failure to require the court
22          reporter to transcribe the instructions.  "Generally," however, "a
            defendant's stipulation not to record a portion of the trial forfeits the
23          claim the record is inadequate for appellate review."  (People v.
            DeFrance (2008) 167 Cal.App.4th 486, 495.)
24

25          Nevertheless, defendant claims without supporting authority that
            "[t]he stipulation and purported waiver were invalid ab initio" and
26          the error was "invited" because the court requested the improper
            stipulation.  In point of fact, the record does not reflect who
27          requested the stipulation because it was reached off the record, and
            when placed on the record, nobody stated who had initiated the
            request for stipulation.  On this record, defendant has forfeited any
28          argument that he was deprived of meaningful appellate review or

26

1    due process by the failure to transcribe the jury instructions.

2   Lodged Doc. 5 at 23-24.

3        Regarding the modification and placement of the defense pinpoint instruction, the court

4   ruled as follows:

5        Defendant contends the court's "abridgement and placement" of the
     pinpoint instruction deprived him of a fair trial, due process, and
6        right to present a defense.   Specifically, he argues the court
     "reduced the [pinpoint] instruction on third party culpability to two
7        sentences[,] then juxtaposed it immediately after CALCRIM 373
     instructing jurors on other perpetrators, and buried it within the very
8        lengthy CALCRIM 375 which instructed jurors on uncharged
     offenses," thereby "entirely emasculat[ing] the [pinpoint]
9        instruction" and "creat[ing] uncertainty and confusion."

10       Defendant has failed to preserve these claims because he did not
     raise them in the trial court.   In fact, the only thing defense counsel
11       stated when asked for comments on the court's modifications to the
     pinpoint instruction was, "I would submit on the pinpoint
12       instruction I submitted to the Court."   On this record, defendant has
     forfeited these claims.

13
     Even on the merits, defendant's argument fails.   The court properly
14       excised portions of the pinpoint instruction because they were
     duplicative of others.   (People v. Panah (2005) 35 Cal.4th 395,
15       486.)   The first sentence about the testimony of others who
     committed the offense was introductory and therefore not
16       necessary.   The remaining sentences stating it was not defendant's
     burden to prove his innocence and it was the prosecution's burden
17       to prove defendant's guilt beyond a reasonable doubt were covered
     by CALCRIM Nos. 103 and 220 on reasonable doubt.

18
     As to his claim that the order of the instructions created uncertainly
19       and confusion and "emasculated" his pinpoint instruction, he fails
     to support his assertions.   In the cases defendant cites for support,
20       the instructions the court gave omitted crucial instructions on the
     defense theory of the case.   (See, e.g., People v. Conley (1968) 268
21       Cal.App.2d 47, 52; People v. Stewart (1968) 267 Cal.App.2d 366,
     374.)   This did not happen here, as the court gave the crux of
22       defendant's pinpoint instruction and the defense was able to argue
     that somebody other than defendant was responsible for the
23       methamphetamine manufacturing.   Furthermore, even in cases
     where the instructions have been organized "willy-nilly" or in rote
24       numerical order, there is still "scant precedent for reversal."
     (People v. Carrasco (1981) 118 Cal.App.3d 936, 943-944.) Finally
25       the jury did not indicate it misunderstood or was confused about the
     pinpoint instruction so there is no basis on which to do more than
26       speculate that jurors misunderstood or were confused about these
     instructions.

27

28   Lodged Doc. 5 at 25-27.

27

1        D.  Procedural Default

2        Respondent contends that this claim is procedurally barred.  For the same reasons

3 explained previously regarding Claim One, the court exercises discretion to bypass the default

4 issue and proceed to the merits.  See Lambrix v. Singletary, 520 U.S. at 522−25; Franklin v.

5 Johnson, 290 F.3d at 1232.

6        E.  Objective Reasonableness Under § 2254(d)

7        The state court did not unreasonably apply federal law in resolving this claim.  For the

8 reasons explained by the appellate court, the jury instructions as a whole did not "so infect[] the

9 entire trial that the resulting conviction violates due process."  See Estelle, 502 U.S. at 72.

10 Moreover, as the state court correctly noted, the record does not support any inference that the

11 jury may have applied the challenged instruction in a way that violates the Constitution.  See id.

12 at 72-73.  The jury was instructed correctly on the prosecution's burden of proof and on the

13 theory of the defense.  2 CT 365-66, 369, 373, 376-77, 381.  Neither the substance nor the order

14 of the instructions raises any constitutional concerns.

15        No clearly established federal law is implicated by the trial court's failure to transcribe the

16 reading of the instructions to the jury.  Certainly the better practice is to transcribe the instructions

17 in order to avoid any doubt about the accuracy of the court's reading.  However, the record

18 presented on appeal included the printed instructions that the court read and the transcript of what

19 occurred when the court realized it had omitted two instructions.  See 2 CT 363-81 (instructions

20 given); 4 RT 956-61.  This record permitted adequate review of all petitioner's appellate issues.

21 The U.S. Supreme Court has never identified a violation of the constitutional right to appellate

22 review on even remotely analogous facts, so relief is unavailable in federal habeas.  See Wright v.

23 Van Patten, 552 U.S. at 125-26.

24        Even if this claim is reviewed de novo, on grounds the state court relied exclusively on

25 state law principles and did not reach the merits of the constitutional issue,[15] petitioner is not

26 entitled to relief.  For the reasons noted, the jury instructions did not compromise the fairness of

27

28 [15] See Cone, 556 U.S. at 472.

1   the trial.

2       V.      Claim Five: Failure to Instruct Jury Regarding Transitory Possession

3               A. Petitioner's Allegations

4       Petitioner contends that the trial court violated his rights by failing to sua sponte instruct

5   on the defense of transitory possession.  Petitioner alleges further that his counsel was ineffective

6   for failing to request the instruction.

7               B. The Clearly Established Federal Law

8       Erroneous jury instructions do not support federal habeas relief unless the infirm

9   instruction so infected the entire trial that the resulting conviction violates due process.  Estelle v.

10  McGuire, 502 U.S. 62, 72 (1991) (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973)).  See also

11  Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that

12  the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated

13  some [constitutional right]'").

14      To establish a constitutional violation based on the ineffective assistance of counsel, a

15  petitioner must show (1) that counsel's representation fell below an objective standard of

16  reasonableness, and (2) that counsel's deficient performance prejudiced the defense.  Strickland v.

17  Washington, 466 U.S. 668, 692, 694 (1984).  Prejudice means that the error actually had an

18  adverse effect on the defense.  There must be a reasonable probability that, but for counsel's

19  errors, the result of the proceeding would have been different.  Id. at 693-94.

20              C. The State Court's Ruling

21      The opinion of the California Court of Appeal is the state court decision subject to

22  AEDPA review.  See Ortiz v. Yates, 704 F.3d at 1034.  The appellate court ruled as follows:

23          Defendant contends the court erred in failing to sua sponte instruct
            on the defense of transitory possession and his counsel was
24          ineffective for failing to request the instruction.  We disagree
            because this defense simply does not fit here.

25
            The defense of transitory possession is available when there is
26          evidence that a defendant possessed narcotics "for only brief
            moments" in order to dispose of it.  (People v. Mijares (1971) 6
27          Cal.3d 415, 423; CALCRIM No. 2305.)  The only
            methamphetamine found here was an ounce in a plastic storage
28          container in the Pace Arrow and possibly two more ounces that

                                            29

were sitting on two coffee filters on the floor of the shower stall in the Pace Arrow.  There was no evidence defendant was disposing of the methamphetamine, unlike the waste associated with its manufacturing.  As such, there was no error in failing to either give or request the instruction.

Lodged Doc. 5 at 27.

#### D.  Objective Reasonableness Under § 2254(d)

The state court disposed of this claim on state law grounds.  It's holding that the facts did not support the transitory possession instruction is unreviewable here.  See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (state court's ruling on state law issue binding on federal habeas court). Where jury instructions are correct under state law, there can be no due process violation.  Spivey v. Rocha, 194 F.3d at 976.  There is no basis here for a finding that the trial was rendered fundamentally unfair by the court's failure to instruct on a factually unsupported defense.  And because the instruction was not appropriate under California law on the facts of the case, counsel cannot have been ineffective for failing to request it.  Petitioner is not entitled to relief on this claim under any standard of review.

### VI.    Claim Six: Prosecutorial Discovery Of Petitioner's Correspondence

#### A.  Petitioner's Allegations

Before the start of trial, the court addressed a discovery dispute regarding two letters written by petitioner which had been in Cominos's possession.  The first was an undated 28-page letter that was in an envelope marked "legal mail" and addressed to petitioner's attorney.  It contained petitioner's notes about the case.  The letter never made it to counsel because it was returned to petitioner for insufficient postage.  Petitioner then gave the letter and envelope to Cominos.  Cominos in turn gave the letter to his attorney, who then gave it to petitioner's attorney.  The second letter, which was not addressed to anyone, was dated August 24, 2006 and was given to Cominos by petitioner.  1 RT 180.[16]

The court ordered both letters produced to the prosecutor, finding that defendant had waived the attorney-client privilege as to the first letter.  1 RT 184.  Petitioner alleges that his

---

[16] Defense counsel asserted attorney-client privilege in regards to the first letter, but not the second.  1 RT 181.

1    rights to due process and a fair trial were violated.  He alleges further that his trial lawyer

2    provided ineffective representation by failing to seek writ review of the trial court's ruling.

3        B.  The Clearly Established Federal Law

4        The attorney-client privilege is a creature of state law, and is not grounded in the

5    Constitution.  See Maness v. Meyers, 419 U.S. 449, 461 n. 8 (1975) (distinguishing Fifth

6    Amendment privilege against self-incrimination, made applicable to the states by the Fourteenth

7    Amendment, from state-law privileges including the attorney-client privilege).

8        To establish a constitutional violation based on the ineffective assistance of counsel, a

9    petitioner must show (1) that counsel's representation fell below an objective standard of

10   reasonableness, and (2) that counsel's deficient performance prejudiced the defense.  Strickland v.

11   Washington, 466 U.S. 668, 692, 694 (1984).  Prejudice means that the error actually had an

12   adverse effect on the defense.  There must be a reasonable probability that, but for counsel's

13   errors, the result of the proceeding would have been different.  Id. at 693-94.

14       C.  The State Court's Ruling

15       The opinion of the California Court of Appeal is the state court decision subject to

16   AEDPA review.  See Ortiz v. Yates, 704 F.3d at 1034.  The appellate court ruled as follows:

17
>           Because counsel failed to seek writ review of the court's discovery
18          ruling, defendant's claim of trial court error is not cognizable.
>           "Interlocutory review by writ is the only adequate remedy where a
19          court orders production of documents which may be subject to a
>           privilege, 'since once privileged matter has been disclosed there is
20          no way to undo the harm which consists in the very disclosure.'"
>           (Korea Data Systems Co. v. Superior Court (1997) 51 Cal.App.4th
21          1513, 1516.)

22          Because counsel failed to seek writ review and failed to assert the
>           "joint defense privilege," defendant claims counsel was ineffective.
23          We find counsel's performance was not deficient because the court's
>           discovery order was not error.

24          At the time of the trial court's ruling, the evidence before the court
>           was that defendant voluntarily gave both letters to Cominos.
25          [Footnote omitted.]  By doing so, defendant waived the right to
>           claim the letters were protected by the lawyer-client privilege.
26          (Evid. Code, § 912, subd. (a).

27          Only in letters to the trial court dated September 29, 2006, and
>           November 2, 2006, did defendant state Cominos took the 28-page
28          letter without his permission.  Notably, on August 30, 2006 and

1    September 12, 2006 at Marsden hearings, defendant said no such
      thing.
2
      "Nevertheless," defendant contends, "even assuming . . . [he]
3     voluntarily shared the letters, at the time, [he] shared a joint defense
      privilege with co-defendant Cominos and thus no waiver occurred."
4     According to defendant, "[t]he 'joint defense privilege' is an
      extension of the attorney-client privilege applicable where parties
5     join forces on an issue of common interest."

6     However, the very case defendant cites for this proposition
      "reject[ed] this characterization to the extent it suggests there is an
7     expanded attorney-client relationship encompassing all parties and
      counsel who share a common interest." (OXY Resources
8     California LLC v. Superior Court (2004) 115 Cal.App.4th 874,
      889.) "Rather, [the joint defense or] the common interest doctrine
9     is more appropriately characterized under California law as a
      nonwaiver doctrine, analyzed under standard waiver principles
10    applicable to the attorney-client privilege and the work product
      doctrine." (Ibid., fn. omitted.) That doctrine arises from Evidence
11    Code section 912, subdivision (d) which states that "[a] disclosure
      in confidence of a communication that is protected by . . . [the]
12    (lawyer-client privilege) . . . when disclosure is reasonably
      necessary for the accomplishment of the purpose for which the
13    lawyer . . . was consulted, is not a waiver of the privilege." (OXY,
      at p. 890.)
14
      The problem with applying the joint defense or common interest
15    doctrine here is that defendant does not explain how disclosure of
      the letters was reasonably necessary for the accomplishment of the
16    purpose for which counsel was consulted. Moreover, defendant and
      Cominos did not share a common interest, as Cominos's counsel
17    stated she wanted to use those letters against defendant to show his
      knowledge of methamphetamine manufacturing. This being the
18    case, the court did not err in ordering the discovery of the letter to
      the prosecutor, and trial counsel was not deficient for failing to
19    bring the writ.

20   Lodged Doc. 5 at 28-31.

21        D.  Procedural Default

22        Respondent contends that part of this claim is procedurally barred.  For the same reasons

23   explained previously regarding Claim One, the court exercises discretion to bypass the default

24   issue and proceed to the merits.  See Lambrix v. Singletary, 520 U.S. at 522−25; Franklin v.

25   Johnson, 290 F.3d at 1232.

26        E.  Objective Reasonableness Under § 2254(d)

27        Petitioner is not entitled to habeas relief because the Supreme Court has not clearly

28   established a constitutionally-protected attorney-client privilege.  Beckler v. Superior Court, 568

                                          32

1    F.2d 661, 663 n.3 (9th Cir. 1978) (citing <u>Maness v. Meyers</u>, 419 U.S. 449, 466 n. 15 (1975)).  In

2    the absence of such authority, the state court cannot have unreasonably applied federal law.  <u>See</u>

3    <u>Wright v. Van Patten</u>, 552 U.S. at 125-26.  Even if the violation of privilege claim is reviewed de

4    novo, the absence of any constitutional basis precludes relief.  <u>See</u> 28 U.S.C. § 2254(a).

5    Furthermore, because the letters were not used against petitioner at trial, their disclosure cannot

6    have affected the verdict or compromised the fundamental fairness of the trial in violation of due

7    process.[17]

8         The state court of appeal did not unreasonably apply <u>Strickland</u>.  This court may not

9    revisit the state court's conclusion that the attorney-client privilege had been waived under

10    California law.  <u>See</u> <u>Evans v. Raines</u>, 800 F.2d 884, 887 n. 4 (9th Cir. 1986) (because attorney-

11    client relationship is created and controlled by state law, waiver of privilege in state proceedings

12    is a state law question); <u>see also</u> <u>Bradshaw v. Richey</u>, 546 U.S. at 76  (state court holdings on

13    state law questions are binding on federal habeas court).  Given the court of appeal's ultimate

14    conclusion that the trial court did not err in ordering discovery of the letters, it would have been

15    futile for trial counsel to seek writ review.  Accordingly, there was no deficient performance or

16    resulting prejudice.

17       VII.    <u>Claim Seven: Cumulative Error</u>

18          A. <u>Petitioner's Allegations</u>

19      Petitioner contends that the cumulative effect of the errors presented in claims One

20    through Six deprived him of due process and a fair trial.

21    ////

22

23    [17] Petitioner contends here as he did in the trial court that Detective Gartner changed his
testimony based on the contents of petitioner's letter to counsel.  <u>See</u> ECF No. 21(traverse) at 35;

24    2 CT 418-20 (defendant's letter to trial court dated September 29, 2006).  According to petitioner,
Gartner's trial testimony differed from his preliminary hearing testimony regarding where he was

25    standing when he saw petitioner running from the Pace Arrow.  Petitioner, however, points to no
facts suggesting that Det. Gartner read the disclosed attorney-client letter between the preliminary

26    hearing and the trial.  Moreover, Det. Gartner's trial testimony on this point was not material to
any element of the charged offense.  Accordingly, even the prosecutor shared the letter with Det.

27    Gartner, disclosure of the attorney-client communication cannot have affected the verdict or
rendered the trial fundamentally unfair.

28

1

B.  The Clearly Established Federal Law

2      The combined effect of multiple trial court errors violates due process when it renders the

3   resulting criminal trial fundamentally unfair.  Chambers v. Mississippi, 410 U.S. 284, 298, 302-

4   03 (1973).  The cumulative effect of multiple errors can violated due process even when no single

5   error rises to the level of a constitutional violation.  Id. at 290 n.3.

6

C.  The State Court's Ruling

7      The opinion of the California Court of Appeal is the state court decision subject to

8   AEDPA review.  See Ortiz v. Yates, 704 F.3d at 1034.  The appellate court ruled as follows:

9
> Defendant contends the cumulative effect of the foregoing alleged
> errors requires reversal of his conviction.  Because we have found
10 > no errors, defendant's contention fails.

11  Lodged Doc. 5 at 31.

12

D.  Objective Reasonableness Under § 2254(d)

13      The state court's ruling on cumulative error was not unreasonable.  By definition,

14  cumulative error requires the existence of error.  See Mancuso v. Olivarez, 292 F.3d 939, 957 (9th

15  Cir. 2002).  For the reasons already explained, the state court reasonably found no error.  There is

16  accordingly nothing to cumulate.  Id.  Moreover, the alleged errors here do not implicate

17  fundamental fairness, either separately or together.  Relief is therefore unavailable.  See Ybarra v.

18  McDaniel, 656 F.3d 984, 1001 (9th Cir. 2011) (petitioner not entitled to relief for cumulative

19  error where trial imperfections do not infect trial with unfairness in violation of due process), cert.

20  denied, 133 S.Ct. 424 (2012).

21      VIII.   Claim Eight: Withdrawn

22      Petitioner has voluntarily withdrawn his eighth ground for relief, which challenged the

23  trial judge's exercise of sentencing discretion.  Petitioner concedes this claim is unexhausted.

24  ECF No. 21 (Traverse) at 16.

25      IX.   Claim Nine: Instructional Error Regarding Aiding and Abetting

26

A.  Petitioner's Allegations

27      A few hours into deliberations, the jury sent the court a note requesting the following: (1)

28  "define 'knowingly participated in the beginning or intermediate process' & does the purchasing

34

1    and disposing of components involved (pills, chemicals, etc) is that considered participating"; (2)

2    "What is consider[ed] 'beginning' of the process?"  2 CT 390.[18]

3          This note led the court to realize it had forgotten to give CALCRIM Nos. 400 and 401 on

4    aiding and abetting, which the parties had previously agreed should be given.  Defense counsel

5    objected that the error in failing to give the instructions was "waive[d]" because both parties

6    agreed (right after the court had read the instructions) that the court had instructed the jury

7    correctly and that the instructions, if given now, would be "unduly highlight[ed]" for the jury.  4

8    RT 957.  The court overruled defense counsel's objection.  Id.

9          The court then called the jury into the courtroom and, before answering the jury's

10   question, provided the following previously omitted instructions:

11              A person may be guilty of a crime in two ways.  One, he or she may
               have directly committed the crime.  Two, he or she may have aided
12             and abetted somebody else who committed the crime.

13              In these instructions I will call that other person the perpetrator.

14              A person is equally guilty of the crime whether he or she committed
               it personally or aided and abetted the perpetrator who committed it.
15

16              To prove that the Defendant is guilty of a crime based on aiding and
               abetting a crime, the People must prove that:

17              The perpetrator committed the crime;

18              [T]he Defendant knew that the perpetrator committed the crime
               before or during the commission of the crime;
19

20              The Defendant intended to aid and abet the perpetrator in
               committing the crime;

21              And, the Defendant's words or conduct[] did aid the perpetrator's
               commission of the crime.
22

23              Someone aids and abets a crime if he or she knows of the

24   _____

     [18] Pursuant to California law, the jury was instructed as follows:  "The People do not need to
25   prove that the defendant completed the process of manufacturing or producing a controlled
     substance.  Rather, the People must prove that the defendant knowingly participated in the
26   beginning or intermediate steps to process or make a controlled substance.  Thus, the defendant is
     guilty of this crime if the People have proved that: (1) The defendant engaged in the synthesis,
27   processing, or preparation of a chemical that is not itself a controlled substance; AND (2) The
     defendant knew that the chemical was going to be used in the manufacture of a controlled
28   substance."  2 CT 377.

1    perpetrator's unlawful purpose and he or she intends to and does, in
2    fact, aid, facilitate, promote, or instigate the perpetrator in the
     commission of that crime.

3    If all of these requirements are proved, the Defendant does not need
4    to actually have been present when the crime was committed to be
     guilty as an aider and abetter.

5  4 RT 960-61.

6       The court then told the jury it should assume these instructions would have been read that

7  morning had the court not forgotten them.  The jury was instructed not to give the previously-

8  omitted instructions "any undue significance."  4 RT 961.

9       With respect to the jury's note, the court next stated as follows:

10   All right.  Let me now turn to the second issue which was the
     question.  The question I have received from you is that you wish to
11   have some information with regarding to define knowingly
     participate in the beginnings or intermediate process and does the
12   purchasing and disposing of components involved, etcetera.  Is that
     considered participating?  What is considered the beginning of the
13   process?

14   What I can tell you on this is that you have heard all of the evidence
     in this case that you are going to hear.  I have also given you all of
15   the instructions that will be provided to you in this case.  These
     questions are questions you will need to answer among yourselves
16   in your deliberative process.

17  4 RT 961.

18      The jury then resumed deliberations.  The verdict was returned shortly thereafter.

19      Petitioner contends that (1) there was insufficient evidence to support giving the

20  instructions; (2) the instructions were deficient because they omitted language addressing mere

21  presence at the crime scene; and (3) the court erred in failing to answer the jury's written

22  question.  Petitioner also alleges that trial counsel provided ineffective assistance by (1) initially

23  agreeing that the instructions were appropriate; (2) failing to object to the omission of mere

24  presence language; and (3) failing to insist on a full and accurate answer to the jury's written

25  question.

26          B.  The Clearly Established Federal Law

27      Erroneous jury instructions do not support federal habeas relief unless the infirm

28  instruction so infected the entire trial that the resulting conviction violates due process.  Estelle v.

1    McGuire, 502 U.S. 62, 72 (1991) (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973)).  See also

2    Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that

3    the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated

4    some [constitutional right]'").  The challenged instruction may not be judged in artificial

5    isolation, but must be considered in the context of the instructions as a whole and the trial record

6    overall.  Estelle, 502 U.S. at 72.  Moreover, relief is only available if there is a reasonable

7    likelihood that the jury has applied the challenged instruction in a way that violates the

8    Constitution.  Id. at 72–73.

9         To establish a constitutional violation based on the ineffective assistance of counsel, a

10   petitioner must show (1) that counsel's representation fell below an objective standard of

11   reasonableness, and (2) that counsel's deficient performance prejudiced the defense.  Strickland v.

12   Washington, 466 U.S. 668, 692, 694 (1984).  Prejudice means that the error actually had an

13   adverse effect on the defense.  There must be a reasonable probability that, but for counsel's

14   errors, the result of the proceeding would have been different.  Id. at 693-94.

15           C.  The State Court's Ruling

16        The opinion of the California Court of Appeal is the state court decision subject to

17   AEDPA review.  See Ortiz v. Yates, 704 F.3d at 1034.  The appellate court ruled as follows:

18           B.  *There Was Sufficient Evidence To Instruct On Aiding And*
             *Abetting*
19

20           Aiding and abetting liability for manufacturing a controlled
             substance requires that a defendant: (1) knew of the unlawful
21           purpose of the perpetrator to manufacture a controlled substance;
             (2) held the specific intent or purpose of committing, engaging in,
             or facilitating the manufacture of a controlled substance; and (3) by
22           act or advice, aided, promoted, encouraged, or instigated the
             manufacture of a controlled substance.  (People v. Sanchez (1994)
23           27 Cal.App.4th 918, 923.)

24           Defendant contends the court erred in instructing the jury on aiding
             and abetting because there was insufficient evidence to support the
25           instruction, and his counsel was ineffective for failing to object.
             We disagree because there was sufficient evidence from which the
26           jury could have found defendant aided and abetted Cominos in
             manufacturing methamphetamine in the Winnebago and/or the Pace
27           Arrow.

28           Defendant and Cominos were friends who spent time in each other's

                                              37

motor homes, both of which contained working methamphetamine laboratories.  It could be inferred defendant knew of the nature of methamphetamine and methamphetamine manufacturing from his prior possession of the drug and the waste products associated with its manufacturing that he possessed four months before his arrest in this case.  It also could be inferred that defendant knew Cominos was manufacturing methamphetamine in one or both motor homes because of the strong chemical smell emanating from the Winnebago and the Pace Arrow, the latter which defendant had just left.  Finally, it could also be inferred from the evidence that defendant provided Cominos access to his Winnebago where some of the manufacturing was taking place, because Cominos had been seen in the Winnebago, defendant was found in possession of the key to the motor home when arrested, and the manufacturing process in both laboratories was similar.  This evidence was sufficient to instruct on aiding and abetting and is sufficient to defeat defendant's claim of ineffective assistance of counsel.

C.  *The Court Did Not Err In Failing To Instruct On Mere Presence At The Scene Of The Crime*

Defendant contends the court erred in failing to give the optional first bracketed paragraph in CALCRIM No. 401 regarding mere presence at the scene of the crime, and his counsel was ineffective for failing to object.

The paragraph defendant contends should have been given reads as follows: "If you conclude that defendant was present at the scene of the crime or failed to prevent the crime, you may consider that fact in determining whether the defendant was an aider and abettor. However, the fact that a person is present at the scene of a crime or fails to prevent the crime does not, by itself, make him or her an aider and abettor." (CALCRIM No. 401.)

Here, the court did not err in omitting that portion of the instruction because there was uncontroverted evidence defendant was not merely present at the scene of the manufacturing or failed to prevent the crime. He possessed the keys to the Winnebago where some of the manufacturing was occurring, he had the waste products of manufacturing in his brown pickup, he fled from the police, and he was found hiding behind the Pace Arrow where more manufacturing was taking place and where he had just been seen leaving.  Given this evidence, the court did not err in omitting the mere presence portion of the instruction, and counsel was not deficient for failing to object.

D.  *The Court Did Not Err In Its Response To The Jury's Question*

As noted, the jury asked the court to "define 'knowingly participated in the beginning or intermediate process' & does the purchasing and disposing of components involved (pills, chemicals, etc) is that considered participating" and "[w]hat is consider[ed] 'beginning' of the process?"

Defendant contends the court erred in failing to "respond[] directly

38

to the jury's questions," instead simply instructing pursuant to CALCRIM Nos. 400 and 401 and "fail[ed] to clarify" that defendant's "mere purchase or disposal of components was not sufficient to prove participation.

As to the court's alleged failure to respond directly to the jury's question, defendant is mistaken. The court separately responded to the jury's question after it had instructed on aiding and abetting, noting it was "now turn[ing] to the second issue which was the [jury] question" and then instructed as follows: "[Y]ou have heard all of the evidence in this case that you are going to hear. I have also given you all of the instructions that will be provided to you in this case. These questions are questions you will need to answer among yourselves in your deliberative process."

As to the court's failure to clarify that "mere purchase or disposal of components was not sufficient to prove knowing participation," there was no error. While "[t]he court has a primary duty to help the jury understand the legal principles it is asked to apply," "[t]his does not mean the court must always elaborate on the standard instructions. Where the original instructions are themselves full and complete, the court has discretion . . . to determine what additional explanations are sufficient to satisfy the jury's request for information." (People v. Beardslee (1991) 53 Cal.3d 68, 97.)

Here, the court's given instructions adequately covered the jury's question. The court appropriately referred the jury back to the instructions that fully and completely outlined these principles. Those instructions told the jury, "the People must prove that the defendant knowingly participated in the beginning or intermediate steps to process or make a controlled substance," which required proof that "[t]he defendant engaged in the synthesis, processing, or preparation of a chemical that is not itself a controlled substance" and "[t]he defendant knew that the chemical was going to be used in the manufacture of a controlled substance."

Lodged Doc. 5 at 36-39.

    D. <u>Objective Reasonableness Under § 2254(d)</u>

The state court's disposition of this claim did not involve the unreasonable application of federal law, and the facts do not support habeas relief even under de novo review. The sufficiency of the evidence to support the aiding and abetting instruction, the omission of "mere presence" language, and the trial court's response to the jury's note, are all matters of state law. The appellate court's determination of those questions is binding on this court. See <u>Bradshaw v. Richey</u>, 546 U.S. at 76. Because the instructions were correct under California law, there can be no due process violation. <u>Spivey v. Rocha</u>, 194 F.3d at 976.

Review of the record as a whole reveals no fundamental unfairness. The jury was

1   properly instructed on the prosecutor's burden of proof, the required standard of proof, and

2   possible third party liability as grounds for reasonable doubt.  The evidence was more than

3   sufficient to support a conclusion that petitioner was primarily (if arguably not exclusively)

4   responsible for the Winnebago meth lab.  Accordingly, instructions on aiding and abetting

5   liability cannot have been unconstitutionally applied.

6        The state court's resolution of the related <u>Strickland</u> claim was not unreasonable.  Because

7   the jury was properly instructed, counsel cannot have performed unreasonably or prejudicially in

8   relation to this issue.  For all these reasons, petitioner is not entitled to relief on Claim Nine.

9        X.        <u>Claim Ten: Ineffective Assistance of Counsel and Prosecutorial Misconduct</u>

10             A.  <u>Ineffective Assistance of Counsel</u>

11                  1.  <u>Petitioner's Allegations</u>

12        Petitioner contends that this trial attorney provided ineffective assistance of counsel by

13   "failing to prepare for trial; failing to defend against harmful and prejudicial facts not in evidence;

14   failing to defend against prosecution expert testimony; failing to object and defend against

15   prosecutorial misconduct; failing to investigate all possible defenses including the defense of

16   transitory possession for the purposes of disposal of methamphetamine manufacturing chemicals;

17   stipulating to the Evidence Code § 1101(b) evidence thereby forfeiting any defense against it and

18   effectively waiving Petitioner's 4th, 5th, 6th and 14th Amendment rights."  ECF No. 1 at 11-12.[19]

19                  2.  <u>The Clearly Established Federal Law</u>

20        To establish a constitutional violation based on the ineffective assistance of counsel, a

21   petitioner must show (1) that counsel's representation fell below an objective standard of

22   reasonableness, and (2) that counsel's deficient performance prejudiced the defense.  <u>Strickland v.</u>

23   <u>Washington</u>, 466 U.S. 668, 692, 694 (1984).  Prejudice means that the error actually had an

24   adverse effect on the defense.  There must be a reasonable probability that, but for counsel's

25   errors, the result of the proceeding would have been different.  <u>Id.</u> at 693-94.

26

27

28   [19] Citations to court documents refer to the page numbers assigned by the court's electronic
     docketing system and not those assigned by the parties.

1          3.  The State Court's Ruling

2          This claim was presented to the California Supreme Court in a habeas petition that was

3   denied without comment or citation.  Lodged Docs. 16, 17.  No lower state court issued a

4   reasoned opinion.  Accordingly, this court asks whether it was objectively unreasonable for the

5   state court to conclude that there was no prima facie case of a constitutional violation.  See

6   Pinholster, 131 S. Ct. at 1402; Nunes, 350 F.3d at 1054-55.

7          4.  Objective Reasonableness Under § 2254(d)

8          Petitioner's allegations of ineffective assistance, in this court and in the California

9   Supreme Court, are entirely conclusory and unsupported by any extra-record facts or identifiable

10  references to the record.  Petitioner does not specify what additional preparation for trial was

11  required, what further investigation would have revealed, or how counsel could have prevented

12  the various alleged errors of which he complains.  On this record, it was not unreasonable of the

13  state court to conclude that petitioner had failed to present a prima facie case of ineffective

14  assistance of counsel.  See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) (stating that

15  "[c]onclusory allegations which are not supported by a statement of specific facts do not warrant

16  habeas relief."); Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997) ("Speculation about what

17  [a witness] could have said is not enough to establish prejudice."); Hendricks v. Calderon, 70

18  F.3d 1032, 1042 (1995) ("Absent an account of what beneficial evidence investigation into any of

19  these issues would have turned up, [petitioner] cannot meet the prejudice prong of the Strickland

20  test.").

21         After the jury's verdict and prior to the bench trial on petitioner's prior convictions, trial

22  counsel Matthew Scoble, then a Sacramento County Assistant Public Defender, was replaced by

23  attorney Shon Northam.[20]  At a subsequent motion for a new trial on grounds of ineffective

24  assistance, Mr. Scoble testified regarding his extensive but unsuccessful efforts to locate Stacey

25  and Moe, or any witnesses (including Gary Darst, Kelly Daniels and Sherry Gomes, among

26  others) who could corroborate Stacey's residence in the Winnebago and/or responsibility for the

27  

---

28  [20] Petitioner made many complaints about Mr. Scoble's representation prior to and during the trial, but all previous Marsden motions were denied after hearing.

41

1  meth operation.  4 RT 1094-1109.  Petitioner testified.  4 RT 1113-1129.  The trial court also

2  considered the transcripts of the previous Marsden hearings.[21]  4 RT 1110.  The court ruled as

3  follows:

4          I'm going to deny the motion for a new trial.  The basis for it,
           there's nothing that I can identify that Mr. Scoble could have done
5          more than what he already has done.  It appears to the Court that in
           fact Mr. Scoble made every possible effort, that he was extremely
6          diligent in trying to track down Stacey and Moe.

7  4 RT 1164.

8          In light of the record before the trial court, including the Marsden proceedings (which the

9  undersigned has reviewed[22]), these findings were not unreasonable.  In state habeas, petitioner

10  proffered no additional information that would have warranted reopening the issue.  Even under a

11  de novo standard of review in this court, the claim would fail for want of a prima facie case.

12  Accordingly, petitioner is not entitled to federal habeas relief on this claim.

13              B.  Prosecutorial Misconduct

14                  1.  Petitioner's Allegations

15          Petitioner contends that the prosecutor "provided misconduct throughout the trial by

16  eliciting testimony to facts not in evidence; arguing facts not in evidence before the jury;

17  deceiving the court and the jury; misstating testimony; and mischaracterizing evidence."  ECF

18  No. 1 at 12.

19                  2.  The Clearly Established Federal Law

20          Prosecutorial misconduct does not, per se, violate a petitioner's constitutional rights.  See

21  Darden v. Wainwright, 477 U.S. 168, 181 (1986).  Rather, claims of prosecutorial misconduct are

22  reviewed in light of the record as a whole, to determine whether the prosecutor's actions so

23  infected the trial with unfairness as to make the resulting conviction a denial of due process.

24  Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  Relief is limited to cases in which the

25

26  [21] People v. Marsden, 2 Cal. 3d 118 (1970).

27  [22] The transcripts of all Marsden proceedings were provided to this court by the Third District
    Court of Appeal under seal.  ECF No. 29.  The undersigned has reviewed all the proceedings
    transcribed under seal, and finds they contain no facts which cast doubt on the reasonableness of
28  the state courts' adjudication of any of petitioner's claims.

1    petitioner can establish that prosecutorial misconduct resulted in actual prejudice.  <u>Darden</u>, 477

2    U.S. at 181-83.

3                         3.   <u>The State Court's Ruling</u>

4         This claim was denied by the California Supreme Court without comment or citation, and

5    no lower state court issued a reasoned opinion.  Accordingly, this court asks whether it was

6    objectively unreasonable for the state court to conclude that there was no prima facie case of a

7    constitutional violation.  <u>See Pinholster</u>, 131 S. Ct. at 1402; <u>Nunes</u>, 350 F.3d at 1054-55.

8                         4.   <u>Objective Reasonableness Under § 2254(d)</u>

9         Petitioner's allegations of prosecutorial misconduct, in this court and in the California

10   Supreme Court, are entirely conclusory and unsupported by citations to the record.  Petitioner

11   does not specify what facts not in evidence were elicited or argued, how the court and jury were

12   deceived, or how evidence was mischaracterized.  On this record, summary denial for failure to

13   state a prima facie case is not unreasonable.  <u>See James</u>, 24 F.3d at 26.  Even under a de novo

14   standard of review in this court, the claim would fail for want of supporting facts.

15                              <u>CONCLUSION</u>

16        For all the reasons explained above, the state courts' denial of petitioner's claims was not

17   objectively unreasonable within the meaning of 28 U.S.C. § 2254(d).  Moreover, as to any claims

18   arguably subject to de novo review, the record demonstrates that petitioner's constitutional rights

19   were not violated.  Accordingly, IT IS RECOMMENDED that the petition for writ of habeas

20   corpus be denied.

21        These findings and recommendations are submitted to the United States District Judge

22   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

23   after being served with these findings and recommendations, any party may file written

24   objections with the court and serve a copy on all parties.  Such a document should be captioned

25   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

26   shall be served and filed within fourteen days after service of the objections.  The parties are

27   ////

28   ////

advised that failure to file objections within the specified time may waive the right to appeal the

District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 21, 2014

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE